IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LEE LAWRENCE JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-01149-O-BP |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § § | |
| | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Lee Lawrence Jackson ("Jackson") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

**I.    STATEMENT OF THE CASE**

Jackson was born on November 28, 1969 and was forty-six when his alleged disability began. ECF No. 17-1 at 78. Jackson was categorized as a younger individual (ages 45-49) and remained in this category through the date of his hearing before the Administrative Law Judge ("ALJ"). *Id*. Jackson has at least a high school education and can communicate in English. *Id.*

Jackson filed for DBI and SSI on September 11, 2018, alleging a disability onset date of November 14, 2016. ECF No. 17-1 at 71. The Commissioner denied Jackson's claim initially and upon reconsideration. *Id.* Jackson requested a hearing, which was held before ALJ Brock Cima on December 3, 2019, in Fort Worth, Texas, with Jackson, his attorney, and Barbara A. Dunlap, an

impartial vocational expert ("VE"), present. *Id.* The ALJ issued an unfavorable decision on January 6, 2020, finding that Jackson was not disabled under the meaning of the SSA. *Id.* at 6.

The ALJ employed the statutory five-step analysis and established at step one that Jackson had not engaged in substantial gainful activity since November 14, 2016. *Id.* at 73. At step two, the ALJ determined that Jackson had the following severe impairments: degenerative changes of the cervical spine; degenerative disc disease in the lumbar spine; and degenerative disc disease of the thoracic spine. *Id.* at 74. At step three, the ALJ found that Jackson's impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* The ALJ concluded that Jackson retained the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance; occasionally stoop; occasionally kneel; occasionally crouch; occasionally crawl; occasionally reach in all directions with the right dominant upper extremity; and occasionally handle and finger with the right dominant upper extremity.

*Id.* at 74–75. The ALJ determined at step four that Jackson had no past relevant work, but nevertheless found at step five that Jackson was not disabled under the SSA because jobs exist in significant numbers within the national economy that Jackson could perform. *Id.* at 78–79.

The Appeals Council ("AC") denied review on August 20, 2020. *Id.* at 5. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.   STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program. *See* 20 C.F.R. § 404 (2020). The SSA defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

2

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

The Commissioner employs a five-step analysis to determine if a claimant is disabled and thus entitled to disability benefits. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's RFC, which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 404.1545(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197-98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the

national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record supports their decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III. ANALYSIS

Jackson raises only one issue on appeal, arguing that the ALJ's "credibility findings [were] not supported by substantial evidence" and that, by extension, substantial evidence did not support his entire RFC determination. ECF No. 21 at 1. Jackson argues the ALJ erred when he discounted the credibility of Jackson's complaints because the ALJ depended on only one medical report. *Id.* at 8. He contends there was "no explanation as to the weight given or how this evidence does not support [his] subjective reports of symptoms," and argues that the ALJ's decision took his functional report "out of context" and ran contrary to the overall thrust of medical reports in the

4

record. *Id.* The Commissioner responds that the ALJ properly conducted his credibility analysis by considering the evidentiary record as a whole. ECF No. 22 at 3.

"The responsibility for determining a claimant's RFC lies with the ALJ . . . [and] the ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence." *Ewing v. Colvin*, No. 4:13-CV-085-A, 2014 WL 2464765, at *4 (N.D. Tex. June 2, 2014) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990); SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). Moreover, "[t]he ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Id.* (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). Instead, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations) . . . ." SSR 96-8p, 1996 WL 374184 at *7.

Jackson argues the ALJ improperly relied on his functional report and evidence of his past work experience. ECF No. 21 at 8. However, objective evidence must exist to corroborate subjective complaints of pain. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). Pursuant to SSR 96-7p, an ALJ assessing reports of symptoms like pain or fatigue must conduct an objective-subjective, two-step analysis. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008) (per curiam). In the first (objective) step, the ALJ must determine whether an impairment exists that could reasonably be expected to produce the claimant's symptoms. *Id.* If the ALJ identifies an impairment at step one, the ALJ proceeds to the second (subjective) step and "considers the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the applicant's ability to do basic work." *Id.* at 459. This requires a credibility finding regarding the applicant's self-reported symptoms. *Id.*

The ALJ need not "articulate specifically the evidence that supported his decision and discuss the evidence that was rejected," but is required "to explain his reasons for rejecting a claimant's complaints of pain." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Pursuant to SSR 96-7p and 20 C.F.R. § 416.929(c)(3), an ALJ employs a seven-factor analysis to assess the claimant's credibility regarding subjective allegations of pain or fatigue:

> (1) plaintiff's daily activities; (2) location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of medication taken to relieve pain or other symptoms; (5) treatment, other than medication, undertaken to relieve pain or other symptoms; (6) any other measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.

*Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005) (citing 20 C.F.R. § 416.929(c)(3)). Although the ALJ must explain his reasons, "neither the regulation nor interpretive case law requires that the ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Id.* at 871 (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001)). Further, "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa*, 895 F.2d at 1024.

The ALJ's evaluation of Jackson's subjective complaints of pain and fatigue was sufficiently specific to make clear that he considered the regulatory factors. The ALJ identified the germane legal standards, stated the parameters of his objective-subjective, two-step analysis, and proceeded in compliance with those legal standards. ECF No. 17-1 at 75–77. At step one, the ALJ

6

considered the evidence and concluded that Jackson's medically determinable impairments could reasonably be expected to cause his alleged symptoms. *Id.* at 75. However, the ALJ found Jackson's statements concerning the intensity, persistence, and limiting effects of symptoms inconsistent with medical evidence in the record. *Id.*

The ALJ did not reject Jackson's testimony outright when reaching his decision. *Id.* In fact, the ALJ specifically recited Jackson's subjective complaints made at the hearing: (1) significant back and neck pain; (2) difficulty walking, sitting, and lying down for long periods; (3) trouble maintaining personal hygiene, showering, using the restroom, and brushing his teeth; (4) inability to hold utensils for long periods; (5) inability to drive; and (4) an inability to leave a sitting or lying position for substantial amounts of time at intervals throughout the week. *Id.*

The ALJ robustly explained his conclusion regarding Jackson's ability to work, citing medical evidence from treating physicians, consulting physicians, and other sources, and discussing how that evidence factored into his analysis of Jackson's symptoms. *Id.* at 76. However, the ALJ also noted that Jackson worked for a mattress company in December 2018, in a position that involved "lifting 100 to 125 pounds during the course of work." *Id.* In addition, the ALJ pointed out that Jackson retained the ability to prepare meals, perform some cleaning, and do laundry, and that his physical examinations were routinely normal. *Id.* The ALJ concluded that "the record establishes some degree of limitation, but not to the extent alleged." *Id.* In light of his findings, the ALJ found Jackson capable of work, but suggested physically undemanding jobs with additional postural and manipulative limitations. ECF No. 17-1 at 77.

Considering the ALJ's explanation, it is clear substantial evidence supported the ALJ's RFC determination. Jackson's physical examinations did not show the progressive physical deterioration that is expected when pain and fatigue result in totally disabling symptoms as he

alleged. *Id.* at 74–77. Jackson's examining physicians routinely noted, among other things, intact sensation, normal motor strength, intact cranial nerves, no neurological or gross motor deficits, normal range of motion, intact finger-to-nose coordination, a steady and safe gait without assistive devices, no tenderness to palpation, normal reflexes, and no clubbing, cyanosis, deformity, or edema. *Id.* at 377, 979, 1117, 1354, 1439, 1463, 1548, 1556, 1558, 1566, 1632, 1645, 1698, 1704, and 1712. While Jackson argues that there was other medical evidence in the record contrary to the evidence cited by the ALJ, this argument is unpersuasive. ECF No. 21 at 9. Jackson's "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Caldwell v. Colvin*, No. 4:15-cv-00576-O-BL, 2016 WL 3621097, at *3 (N.D. Tex. June 10, 2016), *rec. adopted*, No. 4:15-cv-00576-O, 2016 WL 3523780 (N.D. Tex. June 28, 2016).

In all but the rarest cases of extraordinary evidentiary clarity, a certain amount of medical evidence will always exist that could theoretically support a different RFC determination. Modern DIB applications and appeals involve voluminous evidentiary records, which is why "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Brown*, 192 F.3d at 496 (quoting *Selders*, 914 F.2d at 617). The Court's job is not to reweigh the evidence nor second guess the Commissioner, but only to ensure that substantial evidence supported his decision. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. The Court finds that substantial evidence supported the ALJ's determination in Jackson's case. Moreover, although the ALJ did not enumerate his findings related to each credibility factor, the decision as a whole reveals he considered the entire record and reached a conclusion grounded in substantial evidence. *See, e.g.*, ECF No. 17-1 at 74–77. Thus, substantial evidence supports his determination discounting Jackson's subjective complaints

8

based on the intensity, persistence, and limiting effects of his impairments. Reversal is not warranted on this ground.

## IV.   CONCLUSION

Because the ALJ employed the correct legal standards and substantial evidence supports his decision, Jackson has failed to show that his decision should be reversed. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on September 20, 2021.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

9